UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CIVIL ACTION, FILE NUMBER _____

| | |
|---|---|
| ADVOCACY CENTER FOR PERSONS WITH DISABILITIES, INC., )<br><br>Plaintiff, )<br><br>vs. )<br><br>MYERS KURTZ, in his official capacity as the Administrator of the G. Pierce Wood Memorial mental institution, operated by the Florida Department of Children and Family Services, FRANCES GIBBONS, in her official capacity as Acting District Administrator of the Florida Department of Children and Family Services, District Eight, and EDWARD FEAVER, in his official capacity as Secretary of the Florida Department of Children and Family Services, )<br><br>Defendants. ) | **COMPLAINT –**<br>**INJUNCTIVE RELIEF SOUGHT** |

## I.  PRELIMINARY STATEMENT

1.   This is a civil rights action for declaratory and injunctive relief.

2.    Plaintiff, ADVOCACY CENTER FOR PERSONS WITH DISABILITIES, INC., ("Advocacy Center") has been denied full disclosure of abuse and neglect records, mortality review

reports, and institutional incident reports regarding the abuse, neglect, or injury of persons who are confined at the G. Pierce Wood mental institution ("G. Pierce Wood"), a state institution operated by Defendants at Arcadia, DeSoto County, Florida.

3. Defendants have denied Plaintiff its statutory access to G. Pierce Wood and to the persons who are confined at G. Pierce Wood.

4. Plaintiff is the designated Protection and Advocacy system for Florida.  Hence, the Center has the right and responsibility to obtain abuse and neglect records, mortality review reports, and institutional incident reports of abuse, neglect, or injury of persons who are confined in mental health facilities.  These records are prepared and maintained by the Defendants and their employees or agents.  Plaintiff also has the right of broad access, without prior notice, to G. Pierce Wood and to persons confined at G. Pierce Wood.

5. Defendants' conduct (as hereafter alleged) has violated Plaintiff's rights as secured by the laws of the United States.

6. Plaintiff seeks access to all records to which it is entitled, access to all persons confined at G. Pierce Wood and all areas used by those persons, and also seeks injunctive relief prohibiting Defendants from abridging Plaintiff's rights in the future.

**2**

## II.  JURISDICTION AND VENUE

7.   This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3)&(a)(4).  This action arises under the laws of the United States and seeks injunctive and other equitable relief under acts of Congress providing for the protection of rights afforded by federal law.

8.   This action further arises under the Civil Rights Act, 42 U.S.C. § 1983, to redress the deprivation under color of state law of rights, privileges, and immunities secured by the Constitution and laws of the United States.

9.   This Court also has the authority pursuant to 28 U.S.C. §§ 2201 and 2202 to enter declaratory judgments declaring the rights and other legal relations of the parties to this action.

10.  The rights sought to be redressed are provided by Sections 105 and 106 of the Protection and Advocacy for Mentally Ill Individuals Act (also known as the Protection and Advocacy for Individuals with Mental Illness Act, hereinafter "PAIMI Act"), 42 U.S.C. §§ 10804 and 10806(b)(3), as amended.

11.  The United States Congress established the PAIMI advocacy system because it found that persons with mental illness who reside in or are confined in state and other facilities are vulnerable to abuse, serious injury, and neglect by not receiving adequate treatment, nutrition, clothing, health care, or discharge planning.  42 U.S.C. §

**3**

10801(a)(1) and (3).

12.   Congress also found that the "[s]tate systems for monitoring compliance with respect to the rights of individuals with mental illness vary widely and are frequently inadequate.   42 U.S.C. § 10801(a)(4) (emphasis added).

13.   One of the stated purposes of the PAIMI Act is to establish and operate a system for the protection of and advocacy for persons with psychiatric disabilities through "activities to ensure the enforcement of the Constitution and Federal and State statutes."  42 U.S.C. § 10801(b)(2)(A).

14.   Consistent with the above purpose, advocacy systems, such as Plaintiff, operating under the PAIMI Act have the right of access to all reports concerning the abuse, neglect, and injury of persons that the PAIMI Act seeks to protect.  42 U.S.C. § 10806(b)(3); 42 C.F.R. § 51.41(c)(2).  Plaintiff also has a right of unaccompanied access to facilities where persons with mental illness are found, and to all persons with mental illness who are confined in those facilities.   42 U.S.C. § 10805(a)(3); 42 C.F.R. § 51.42.

15.   Venue is properly laid in this Court because G. Pierce Wood is located at Arcadia, DeSoto County, Florida; the records to which Plaintiff seeks access are located in DeSoto and Lee Counties, Florida; the events giving rise to the records sought by Plaintiff occurred primarily or totally in DeSoto County, Florida; Defendants FRANCES GIBBONS and MYERS

KURTZ primarily conduct their state actions in Lee and DeSoto
Counties, Florida.  Defendant EDWARD FEAVER is ultimately in
control of and responsible for the operation of the
institutions and numerous offices of the State of Florida
Department of Children and Families that are located within
the geographical jurisdiction of this Court.

### III.  PARTIES

#### A.  PLAINTIFF ADVOCACY CENTER

16.  Plaintiff, ADVOCACY CENTER FOR PERSONS WITH
DISABILITIES, INC., ("CENTER") is a private not-for-profit
Florida corporation, designated by the Governor of Florida in
Executive Orders 87-151 and 94-333, pursuant to 1987 Laws of
Fla., Chapter 87-130, as the recipient of federal funds for
programs providing for the protection and advocacy of the
rights of persons with disabilities.  True copies of 1987 Laws
of Fla., Chapter 87-130, and Executive Orders Numbered 87-151
and 94-333, are attached hereto and incorporated as
"Plaintiff's (Composite) Exhibit One".

17.  The CENTER was established with a federal mandate
under the PAIMI advocacy system to:

a) investigate incidents of abuse and neglect of
persons with mental illness who are found in or are confined
in facilities providing or allegedly providing care and
treatment;

5

b) pursue administrative, legal, and other remedies to ensure the protection of persons who have mental illness; and

c) have access to facilities in the State that are providing or allegedly providing care and treatment to such persons. See, 42 U.S.C. Section 10805, et seq.

18. The CENTER is Florida's designated protection and advocacy system also charged with responsibilities pursuant to:

• 42 U.S.C. § 6042, providing for protection and advocacy for persons with developmental disabilities;

• 29 U.S.C. § 732, the Client Assistance Program;

• 29 U.S.C. § 796g, Protection and Advocacy for Individual Rights; and

• 29 U.S.C. § 2201, Technology-Related Assistance for Individuals with Disabilities).

19. The CENTER has standing to sue under the PAIMI Act, 42 U.S.C. § 10805(a)(1), which authorizes protection and advocacy systems to:

. . .
(B) pursue administrative, legal, and other appropriate remedies to ensure the protection of individuals with mental illness who are receiving care or treatment in the State; . . .

20. The ADVOCACY CENTER has the duty to protect the confidentiality of certain records that it obtains pursuant to the PAIMI Act, including the records of an individual that are

**6**

obtained pursuant to the provisions of 42 U.S.C. §
10805(a)(4), and records concerning the abuse, neglect, or
injury of persons in facilities that are obtained pursuant to
the provisions of 42 U.S.C. § 10806(b)(3).  <u>See</u>, 42 U.S.C. §§
10806(a) and 10806(b)(3)(B).

### B.  DEFENDANT EDWARD FEAVER

21.  Defendant EDWARD FEAVER is the Secretary of the
Florida Department of Children and Family Services ("DCF").
Prior to October 1, 1996, DCF was a part of the Florida
Department of Health and Rehabilitative Services ("HRS").  The
operations formerly executed by HRS were reorganized into new
or existing agencies by the Florida Legislature in 1996.
Under Fla. Stat. § 20.19(1) and (4)(b)4 (1997), Defendant
FEAVER has ultimate administrative responsibility for and
control of the administration of all public mental health
services to persons residing in the State of Florida,
including persons who are confined at G. Pierce Wood.
Defendant FEAVER also has ultimate administrative responsi-
bility for the investigation of reports of abuse and neglect
of children, elders, and persons with disabilities.  Fla.
Stat. § 20.19(1) and (4)(b)3 (1997).  Defendant FEAVER has
actual or constructive possession and control over all abuse
and neglect reports prepared by DCF Protective Services
concerning the abuse and neglect of persons confined at G.
Pierce Wood, and of all reports prepared by G. Pierce Wood

7

staff regarding the abuse, neglect, and injury of persons confined at G. Pierce Wood.    He is sued in his official capacity.

### C.  DEFENDANT FRANCES GIBBONS

22.  Defendant FRANCES GIBBONS is the Acting District Administrator of DCF District Eight.  Defendant GIBBONS has supervisory authority over the Administrator of G. Pierce Wood and over all DCF District Eight Protective Services personnel. Defendant GIBBONS has actual or constructive possession of abuse and neglect reports prepared by DCF District Eight Protective Services staff concerning the abuse and neglect of persons confined at G. Pierce Wood, and of all reports prepared by G. Pierce Wood staff regarding the abuse, neglect, and injury of persons confined at G. Pierce Wood.  Defendant GIBBONS is the successor in office to PHILIP DORSEY, the former Administrator of DCF District Eight when many of the events giving rise to this action occurred.  Defendant GIBBONS is sued in her official capacity.

### D.  DEFENDANT MYERS KURTZ

23.  Defendant MYERS KURTZ is the Administrator of G. Pierce Wood.    Defendant KURTZ has the day-to-day responsibility for and control of the operations of G. Pierce Wood, and has either actual or constructive possession and control over reports written or prepared by G. Pierce Wood staff about the abuse, neglect, or injury of persons confined

8

at G. Pierce Wood.  He is sued in his official capacity.

◆  ◆  ◆

24.  All defendants have at all times relevant to this action acted under color of state law, and at all times relevant to this action, Defendants knew of or should have known of the policies, practices, and acts alleged in this Complaint.

### IV.  FACTUAL ALLEGATIONS

25.  Approximately 350 persons who are have mental illness are confined at G. Pierce Wood.

26.  Since 1988, the constitutionality of conditions at G. Pierce Wood has been the subject of a civil rights class-action which is currently pending before this Court.  <u>Miller Frank Johnson, et al. v. Myers Kurtz, et al.</u>, Case No. 87-369-CIV-T-24 (BUCKLEW), U.S. District Court (M.D.Fla.).

27.  G. Pierce Wood is not accredited by the Joint Commission on Accreditation of Healthcare Organizations.

28.  On August 21, 1995, the Inspector General of the Office of the Governor and the Department of HRS released a report which documented continuing abuse, neglect and injury of persons confined at G. Pierce Wood, including numerous deaths that could have been prevented.

29.  In March 1996 and again in April 1996, Plaintiff made a records request under the PAIMI Act for all incident

reports from G. Pierce Wood.

30.   In June 1996, Plaintiff requested a response from HRS.  In July 1996, Plaintiff wrote to the Legal Counsel for HRS District Eight, documenting previous conversations and providing legal authority for Plaintiff's right to the requested records.

31.   On July 31, 1996, Legal Counsel for HRS District Eight informed Plaintiff that HRS refused to provide copies of any Protective Services records concerning abuse, neglect, and injury, refused to provide copies of unredacted institutional incident reports, but agreed to provide institutional incident reports with the names of the persons redacted.

32.   On August 19, 1996, HRS District Eight provided Plaintiff with copies of some G. Pierce Wood incident reports but with all identifying information such as names and medical information redacted.

33.   On September 5, 1996, Plaintiff documented to Secretary FEAVER and HRS General Counsel RICHARD DORAN its records requests under the PAIMI Act, the legal authority for those requests, and Plaintiff's right to unredacted abuse and neglect investigation reports and internal institutional reports regarding abuse, neglect and injuries of persons confined at G. Pierce Wood, and asked that they reconsider the denial by Legal Counsel for HRS District Eight.

10

34.  On September 17, 1996, HRS General Counsel sent Plaintiff a letter stating that it disagreed that Plaintiff had legal authority to review the records.

35.  On October 31, 1996, Plaintiff wrote to Legal Counsel for HRS District Eight stating that the redactions for medical conditions, symptoms, and diagnoses defeated the purpose of Plaintiff's ability to determine if it needed to go further in its investigations.  Plaintiff then requested specific Incident Reports be provided with only the names, not the medical information, redacted.

36.  As of this date, Defendants continue to refuse to provide the requested records.

37.  During 1997, Plaintiff continued to attempt to obtain the unredacted records but was unsuccessful.  A final meeting on October 1, 1997, with officials of the Department of Children and Families, failed to resolve this controversy, but was followed with the following unexplained events.

## V.  RECENT EVENTS

38.  Through other sources, Plaintiff is aware that incidents of abuse, neglect and injury to persons with mental illness confined at G. Pierce Wood continue to occur, but Plaintiff does not have the specific information it needs to investigate these incidents.

39.   Defendants' redacting the names of the victims at G. Pierce Wood from the records it provided to Plaintiff thwarts Plaintiff's ability to fulfill its protection and advocacy responsibilities under federal and state law.

40.   Plaintiff has recently learned from newspaper reports and other sources of the deaths of two persons confined at G. Pierce Wood which allegedly involve abuse, neglect, or injury of the persons.   On best information available, it was alleged that DONALD HARPER, died in January 1998, after reporting severe abdominal pain for more than 12 hours with no appropriate medical response.   On best information, it was alleged that ELGIA DUPUIS died on February 3, 1998, after suffering head injuries and trauma inflicted on her by persons employed at G. Pierce Wood and acting under the color of state law.

41.   Defendants have refused to allow Plaintiff to have access to the mortality review committee reports prepared by G. Pierce Wood staff regarding the deaths of Ms. DUPUIS, Mr. HARPER.   Defendants have indicated that mortality review committee reports concerning the deaths of any persons confined at G. Pierce Wood will not be disclosed.

42.   Plaintiff's investigation into the death of ELGIA DUPUIS has disclosed serious deficiencies in the delivery of appropriate care to Ms. DUPUIS, and serious deficiencies in G. Pierce Wood's risk management and quality assurance programs.

**12**

The DeSoto County Sheriff's Department has also recommended that homicide charges be brought against two employees of G. Pierce Wood who are suspected of pushing Ms. DUPUIS and causing injuries that resulted in her death.

43.     Plaintiff also learned in early 1998 that approximately eight persons confined at G. Pierce Wood died unexpectedly during 1997.   The number of persons who died unexpectedly at G. Pierce Wood is much greater than the number of persons who died unexpectedly at other mental institutions operated by Defendant FEAVER.   Some of the deaths that occurred are suspected to be related to the abuse, neglect, or injury of the persons who died.

44.  Many of the deaths of persons confined at G. Pierce Wood in 1997 and 1998 may have been prevented had Plaintiff been given access to the records requested under the PAIMI Act.  Upon learning of deficient conditions at G. Pierce Wood, Plaintiff would have taken administrative and legal action to insure the correction of those deficiencies under the authority granted to Plaintiff in the PAIMI Act.  42 U.S.C. § 10805(a)(1)(B).

## VI.  RECENT ON-SITE INVESTIGATION

45.  While Plaintiff's employees were conducting an on-site investigation into the death of ELGIA DUPUIS, Defendant MYERS KURTZ denied Plaintiff's employees unaccompanied access

to areas at G. Pierce Wood where persons are confined and areas used by persons who are confined at G. Pierce Wood.

46.   While Plaintiff's employees were conducting an on-site investigation into the death of ELGIA DUPUIS, Defendants' counsel, SANDRA UPCHURCH, ESQ., Assistant Attorney General, prohibited Plaintiff's employees from speaking with any persons confined at G. Pierce Wood unless it was in regard to the investigation of the death of ELGIA DUPUIS on the grounds that Plaintiff did not give advanced notice of its intent to speak with persons confined at G. Pierce Wood, except in regard to the death investigation.

47.   Plaintiff attempted to resolve the access issues alleged in paragraphs 41, 45, and 46, above, by letter to SANDRA C. UPCHURCH, ESQ., Assistant Attorney General, in her capacity as counsel for Defendants, dated March 2, 1998.  As of the filing of this Complaint, no response has been received.

◆ ◆ ◆

48.   Plaintiff ADVOCACY CENTER has no plain or adequate remedy at law to secure redress.  Unless defendants are restrained and enjoined by this Court, the ADVOCACY CENTER has a reasonable basis to believe that Defendants will continue to deny Plaintiff its rights under the laws of the United States. Without injunctive relief, Plaintiff will continue to suffer immediate and irreparable harm in its ability to fulfill its

**14**

federally mandated duties to provide protection and advocacy services for persons with mental illness.

### VII.  COUNT ONE:  VIOLATION OF 42 U.S.C. § 10806(b)(3)

49.  Plaintiff realleges paragraphs one through 48, above.

50.  42 U.S.C. § 10806(b)(3) gives Plaintiff ADVOCACY CENTER access to specified types of records that are unedited and without redaction of names or other information.  This right of access includes abuse and neglect records prepared by DCF staff, and reports prepared by G. Pierce Wood staff concerning the abuse, neglect, or injury of persons confined at G. Pierce Wood.

51.  The ADVOCACY CENTER requested from defendants copies of all abuse and neglect reports and institutional incident reports over a definite period of time, arising from incidents or alleged incidents of the abuse, neglect, or injury of persons who are confined at G. Pierce Wood.

52.  Defendants have denied and continue to deny Plaintiff's request for copies of abuse and neglect reports prepared by DCF Protective Services personnel.

53.  Defendants have denied and continue to deny Plaintiff's request for unredacted reports prepared by G. Pierce Wood staff about the abuse, neglect, or injury of persons confined at G. Pierce Wood.  Defendants have supplied

15

edited and redacted copies which do not contain identifying and other relevant information.

54. Defendants' redaction of the names of the persons confined at G. Pierce Wood on the institutional reports makes it extremely difficult or impossible for the ADVOCACY CENTER to conduct its legislatively-mandated duty to investigate the incidents involving the actual or alleged abuse, neglect, or injury of persons confined at G. Pierce Wood.

## VIII. COUNT TWO:  OBSTRUCTION OF MONITORING AUTHORIZED BY LAW

55. Plaintiff realleges paragraphs one through 48, above.

56. In Florida, allegations of the abuse and neglect of children and of adults who have disabilities or who are elders are received by and investigated by the Florida Department of Children and Families ("DCF").

57. Defendant GIBBONS has supervisory authority not only over the G. Pierce Wood mental institution, but also over the Protective Services unit which investigates allegations of abuse and neglect at G. Pierce Wood.

58. The dual supervisory role of Defendant GIBBONS alleged in the preceding paragraph gives rise to a lack of independence and a possible conflict of interest, in that she is held responsible for the operation of G. Pierce Wood, while at the same time having authority over the DCF staff who are

**16**

charged with investigating allegations of abuse and neglect at G. Pierce Wood.

59.  The underlying lack of independence in conducting the abuse and neglect investigations and the ostensible conflict of interest on the part of Defendant GIBBONS, as described in the preceding paragraph, points to a particular need to insure that the DCF investigations of abuse and neglect at G. Pierce Wood are performed adequately, and that corrective action is taken when indicated.

60.  Defendant KURTZ has responsibility for the daily operation of G. Pierce Wood, and has supervisory authority over the G. Pierce Wood employees who prepare institutional incident reports regarding the abuse, neglect, or injury to persons confined at G. Pierce Wood.

61.  This dual role of Defendant KURTZ, as described in the preceding paragraph, gives rise to a lack of independence and a possible conflict of interest in the institutional investigation and reporting of incidents of abuse, neglect, and injury of persons confined at G. Pierce Wood.

62.  The ADVOCACY CENTER can not adequately monitor the adequacy of the abuse, injury, and neglect investigations at G. Pierce Wood without full access to the unedited and unredacted abuse and neglect reports and institutional incident reports, as authorized by 42 U.S.C. § 10806(b)(3).

17

63.   The ADVOCACY CENTER also requires full access to the unedited and unredacted reports to enable it to conduct its own investigation of the abuse, injury, or neglect of a person confined at G. Pierce Wood, when necessary.

64.   Defendants' actions in refusing to provide unedited and unredacted abuse and neglect reports and institutional incident reports concerning persons confined at G. Pierce Wood has obstructed the ADVOCACY CENTER from carrying out its duties under the PAIMI Act to monitor and investigate the abuse, neglect, or injury of persons with mental illness who are confined in facilities.

65.   Defendants' actions in denying Plaintiff's access to have unaccompanied access to areas at G. Pierce Wood where persons are confined and to areas that are used by persons who are confined at G. Pierce Wood, in denying Plaintiff's access to speak with persons confined at G. Pierce Wood, and in requiring advanced specific notice of the purpose of Plaintiff's visits to G. Pierce Wood, have obstructed the ADVOCACY CENTER from carrying out its duties under the PAIMI Act to monitor and investigate the abuse, neglect, or injury of persons with mental illness who are confined in facilities.

## IX.   RELIEF REQUESTED

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court:

18

A.   Take jurisdiction of this cause;

B.   Declare unlawful Defendants' refusal to fully disclose to Plaintiff the unedited and unredacted DCF Protective Services reports regarding the abuse, neglect, and injury of persons confined at G. Pierce Wood, and the reports prepared by G. Pierce Wood staff and its agents regarding the abuse, neglect, or injury of persons confined at G. Pierce Wood;

C.   Declare unlawful the Defendants' refusal to allow Plaintiff and its employees and agents to access and freely speak with persons who are confined at G. Pierce Wood without giving specific advanced notice;

D.   Declare unlawful the Defendants' refusal to allow Plaintiff and its employees and agents to have unaccompanied access to all areas of G. Pierce Wood where persons are confined and to areas that are used by persons who are confined at G. Pierce Wood;

E.   Enter an injunction requiring Defendants to:

1)   provide Plaintiff ADVOCACY CENTER with full access to all unedited and unredacted records in their possession regarding the abuse, injury, and neglect of persons confined at G. Pierce Wood, including all Protective Services records written and produced by DCF staff and institutional reports (including mortality review committee reports) written or produced by the Defendants or their employees or agents;

**19**

2)  not interfere with Plaintiff's authority to have access to persons who are confined at G. Pierce Wood without giving specific prior notice to Defendants; and

3) not interfere with Plaintiff's authority to have unaccompanied access to all areas of G. Pierce Wood that are used or occupied by persons who are confined at G. Pierce Wood;

F.  Award costs and attorneys' fees to Plaintiff ADVOCACY CENTER; and

G.  Grant other relief as the Court deems to be just and proper.

DATED this ___10th___ day of April, 1998.

ATTORNEYS FOR PLAINTIFF

WAYNE HAMPTON BASFORD
Fla. Bar No. 0443859
Trial Counsel

ADVOCACY CENTER FOR PERSONS
 WITH DISABILITIES, INC.
2671 Executive Center Circle
 West, Suite 100
Tallahassee, Florida 32301-5092
Telephone:  (904) 488-9071
Facsimile:  (904) 488-8640

for  PETER LLEWELLYN NIMKOFF
Fla. Bar No. 58840
Trial Counsel

20

ADVOCACY CENTER FOR PERSONS
 WITH DISABILITIES, INC.
2671 Executive Center Circle
  West, Suite 100
Tallahassee, Florida 32301-5092
Telephone:  (904) 488-9071
Facsimile:  (904) 488-8640


HELIA MARIA GARRIDO HULL
Florida Bar No. 0061093
Trial Counsel

ADVOCACY CENTER FOR PERSONS WITH
 DISABILITIES, INC.
198 Wilshire Boulevard
Casselberry, Florida  32707
Telephone:  (407) 262-7656
Facsimile:  (407) 262-7661


BONITA M. RIGGENS
Florida Bar No. 400424
Trial Counsel

501 1st Avenue N, Suite 629
St. Petersburg, Florida  33701
Telephone:  (813) 898-1401
Facsimile:  (813) 898-1312

PLAINTIFF'S COMPOSITE EXHIBIT ONE

Approved by the Governor June 30, 1987.

Filed in Office Secretary of State June 30, 1987.

CHAPTER 87-130

Committee Substitute for Senate Bill No. 1181

An act relating to persons with disabilities; authorizing the Governor to designate a private nonprofit corporation to receive federal funds for certain programs providing for protection and advocacy of the rights of persons with disabilities; transferring all powers, duties, property, etc., of the Governor's Commission on Advocacy for Persons with Disabilities to the nonprofit corporation; requiring the nonprofit corporation to meet certain federal requirements; authorizing access to client records and facilities as provided by federal law; providing for the confidentiality of certain records; providing state liability insurance coverage and use of state communications system; requiring state agencies to cooperate with the nonprofit corporation; providing for submission of annual audits by the nonprofit corporation to the Governor; providing an effective date.

Be It Enacted by the Legislature of the State of Florida:

Section 1. Transfer of Governor's Commission on Advocacy for Persons with Disabilities to private nonprofit corporation.--

(1) The Governor, by executive order, may designate a nonprofit corporation as the agency to receive federal funds to implement on behalf of the State of Florida the System for Protection and Advocacy of the Rights of Persons with Developmental Disabilities under 42 U.S.C., ss. 6041-6043, as amended; and the Client Assistance Program under 29 U.S.C., s. 732, as amended; and the Protection and Advocacy System for Mentally Ill Individuals under 42 U.S.C., ss. 10801-10807, as amended; and such other related programs as may be established by the United States Congress.

(2) The executive order designating the nonprofit corporation shall include provisions for the governance and the organizational structure of the corporation.

(3) The designated nonprofit corporation shall be organized pursuant to chapter 617, Florida Statutes, and shall possess all the powers granted by that chapter. All powers, duties, and functions, records, property, and unexpended balances of appropriations, allocations, grants and donations, or other funds of the Governor's Commission on Advocacy for Persons with Disabilities established under Executive Order 86-224 shall upon designation by the Governor be transferred together with title thereto to the nonprofit corporation.

(4) The nonprofit corporation shall meet the requirements necessary to assure compliance with the federal acts for which it is designated to receive funds. In order to properly carry out its powers and duties, the designated corporation shall, in addition to all other requirements, be independent of providers of services to

persons with disabilities; have the capacity to pursue administrative, legal, and other appropriate remedies on behalf of such persons; and, notwithstanding the provisions of any other state law to the contrary, have access to confidential client records and facilities as required and conditioned by 42 U.S.C., s. 6042, as amended, pertaining to persons with developmental disabilities, and by 29 U.S.C., s. 732(g)(2), as amended, pertaining to rehabilitation programs, projects, and facilities, and by 42 U.S.C., ss. 10805 and 10806, as amended, pertaining to the records of and facilities providing treatment to mentally ill individuals. Copies of the aforementioned federal laws shall be made available by the corporation to anyone upon request. Access to facilities is for the purposes of meeting and conferring with clients and staff, providing information, and conducting scheduled and unscheduled visits. Access to records is for the purposes of inspection and copying. The confidentiality provided any record by state law shall be maintained by the nonprofit corporation.

(5) The designated nonprofit corporation shall be eligible to use the state communications system in accordance with s. 282.105(3), Florida Statutes.

(6) Pursuant to the applicable provisions of chapter 284, Florida Statutes, the Division of Risk Management of the Department of Insurance is authorized to insure the designated corporation under the same general terms and conditions as the Governor's Commission on Advocacy for Persons with Disabilities was insured in the Executive Office of the Governor by the division prior to the transfer of its functions authorized by this section.

(7) All departments, officers, agencies, and institutions of the state shall cooperate with the designated corporation in the performance of its duties.

(8) The designated nonprofit corporation shall make provisions for an annual postaudit of its financial accounts by an independent certified public accountant. The annual audit shall be submitted to the Executive Office of the Governor for review.

Section 2. This act shall take effect July 1, 1987.

Approved by the Governor June 30, 1987.

Filed in Office Secretary of State June 30, 1987.

---

CHAPTER 87-131

Committee Substitute for Senate Bill No. 1256

An act relating to transportation; amending s. 339.135, F.S.; removing the requirement for legislative approval of department policies; amending s. 339.24, F.S.; creating s. 339.245, F.S.; creating the Florida Highway Beautification Council; providing membership, terms, and duties; providing for a chairman and staff; providing for the creation of local highway beautification councils; providing duties of the head of the Department of Transportation for the award of highway beautification

# State of Florida

## OFFICE OF THE GOVERNOR

### EXECUTIVE ORDER NUMBER 87-151

WHEREAS, it is the policy of the State of Florida that no person shall be deprived of any right because of a disability, and

WHEREAS, persons with disabilities may require protection, advocacy or assistance in securing their legal and civil rights, and

WHEREAS, the Congress of the United States has made funds available to the State of Florida to implement the Protection and Advocacy System under the Developmental Disabilities Assistance and Bill of Rights Act, 42 U.S.C., ss. 6041-6043, as amended; the Client Assistance Program under the Vocational Rehabilitation Act, 29 U.S.C. s. 732, as amended; and the Protection and Advocacy System for Mentally Ill Individuals under the Protection and Advocacy for Mentally Ill Individuals Act of 1986, 42 U.S.C., ss. 10801-10807, as amended, and

WHEREAS, since 1977 these functions have been faithfully and competently carried out through the staff and members of the Governor's Commission on Advocacy for Persons with Disabilities (hereinafter referred to as the Commission on Advocacy) which presently exists within the Executive Office of the Governor, and

WHEREAS, the independence and effectiveness of the Commission on Advocacy can be strengthened, and the Executive Office of the Governor can increase its efficiency, by placing the Commission on Advocacy outside of state government, and

WHEREAS, in Chapter 87-130, Laws of Florida, the Florida Legislature has authorized the Governor to designate a private nonprofit corporation to receive federal funds to implement the advocacy programs set forth above on behalf of the State of Florida, and

WHEREAS, pursuant to the above statutory authority
the Commission on Advocacy for Persons with Disabilities shall
be transferred to the designated nonprofit corporation, and

WHEREAS, notice has been published in the Florida
Administrative Weekly and hundreds of former clients of the
Commission of Advocacy have been notified of the proposed transfer
and no objections to the transfer were received.

NOW, THEREFORE, I, BOB MARTINEZ, Governor of Florida,
in obedience to my solemn constitutional duty to "take care
that the laws be faithfully executed," and pursuant to the Constituti
and laws of the State of Florida, do hereby promulgate the following
executive order, effective immediately:

Section 1.

Advocacy Center for Persons with Disabilities, Inc.,
is designated as the agency to implement, on behalf of the State
of Florida, the Protection and Advocacy System pursuant to the
Developmental Disabilities Assistance and Bill of Rights Act,
42 U.S.C., ss. 6041-6043, as amended, The Client Assistance
Program pursuant to the Vocational Rehabilitation Act, 29 U.S.C.,
s. 732, as amended, and the Protection and Advocacy System for
Mentally Ill Individuals pursuant to the Protection and Advocacy
for Mentally Ill Individuals Act of 1986, 42 U.S.C., ss. 10801-10807.

Section 2.

All powers, duties, and functions, records, property,
and unexpended balances of appropriations, allocations, grants
and donations, or other funds of the Governor's Commission on
Advocacy for Persons with Disabilities established under Executive
Orders 86-224, 85-30, 83-47, 79-81, 78-7, and 77-39 are hereby
transferred together with title thereto to the Advocacy Center
for Persons with Disabilities, Inc.

Section 3.

Advocacy Center for Persons with Disabilities, Inc.
(hereinafter referred to as the designated corporation) shall
be organized as a nonprofit corporation pursuant to Chapter
617, Florida Statutes and shall provide for a governing board
that insures equitable representation of the interest of persons

with developmental disabilities, the interest of persons with
vocational handicaps, and the interest of mentally ill individuals.

Of the members of the governing board, the designated
corporation shall insure that:

a.  at least one member is a person with a developmental
disability, or a parent or guardian of a person with a developmental
disability.

b.  at least one member is a person who has, or has
had, a vocational handicap.

c.  at least one member is a person who has received
or is receiving mental health services.

The designated corporation shall provide that at
no time shall the governing board consist of a majority of members
actively engaged in the provision of treatment, habilitation
or rehabilitation services to persons with disabilities.

The designated corporation shall provide that each
of the members of the Commission on Advocacy shall continue
to serve as initial members of the governing board of the designated
corporation for a period at least equal to the period remaining
on their terms with the Commission on Advocacy.

Section 4.

The designated corporation shall insure compliance
with all applicable state and federal laws and regulations and
submit to the Governor quarterly financial and program reports,
and on December 1, of each year, a copy of the annual financial
and program reports submitted to the federal government for
each of the designated advocacy programs including an annual
postaudit of its financial accounts prepared by an independent
certified public accountant.

Section 5.

The designated corporation shall have the capacity
to pursue administrative, legal, and other appropriate remedies
on behalf of persons with disabilities, and shall have access
to confidential client records and facilities as described by
Chapter 87-130, Laws of Florida.

Section 6.

The designated corporation will furnish to an individual named by the Governor, notices of disallowances and compliance actions, minutes of the meetings of the governing board, and all other notices and correspondence that may be required to assure compliance with State and Federal laws.  Further, the designated corporation will furnish to the official so named, quarterly reports of both financial condition and advocacy programs, and notices of any meetings of the governing board.  The named individual will be allowed to attend meetings of the governing board unless the board informs the individual that the meeting is to discuss litigation or proposed litigation against an agency of the State of Florida.  The statutory provisions mandating the confidentiality of client records shall bind the individual named by the Governor.

The liaison between the Governor and the designated corporation created by this section is for the purpose of insuring effective coordination and fiscal accountability.  Nothing herein shall be interpreted to limit the designated corporations independence to exercise policy decisions.

Section 7.

In consideration of its important public purpose, all departments, officers, agencies and institutions of the state shall cooperate with the designated corporation in the performance of its duties and extend to it whatever benefits, services or assistance as may reasonably be provided.

Section 8.

The designation of Advocacy Center for Persons with Disabilities, Inc. is for the sole purpose of converting the existing Commission on Advocacy for Persons with Disabilities to a nonprofit corporation.  The transfer is not intended to interfere in any way with the activities of the Commission on Advocacy which shall continue uninterrupted as the designated nonprofit corporation.

Section 9.

Executive Orders 86-224, 85-90, 83-47, 79-31, 78-7, and 77-39 are revoked, rescinded and repealed and the Governor's Commission on Advocacy for Persons with Disabilities is abolished.

Section 10.

     This Executive Order shall be in effect to and including December 31, 1990.

Section 11.

     Notwithstanding the provisions of Section 10, it is intended that this Executive Order will be renewed and extended before December 31, 1990, to provide continuous existence to the designation to Advocacy Center for Persons with Disabilities, Inc., as provided for by Federal and State law.



IN TESTIMONY WHEREOF, I have hereunto set my hand and have caused the Great Seal of the State of Florida to be affixed at Tallahassee, the Capitol, this 8 day of September, 1987.

_____
GOVERNOR

ATTEST:

_____
SECRETARY OF STATE

# State of Florida

# OFFICE OF THE GOVERNOR

## EXECUTIVE ORDER NUMBER    94-333

Extension of Advocacy Center for Persons with Disabilities

WHEREAS, by executive order 87-151, the Governor established the Advocacy Center for Persons with Disabilities to serve the needs of the people of the State of Florida, and

WHEREAS, by the terms of executive order 92-347, the Advocacy Center for Persons with Disabilities will go out of existence on December 31, 1994, unless extended by amendment, and

WHEREAS, the Governor has determined that the Advocacy Center for Persons with Disabilities serves a useful and productive State purpose and therefore should be extended by amendment.

NOW, THEREFORE, I, LAWTON CHILES, Governor of Florida, by virtue of the authority vested in my by the laws and constitution of the State of Florida, do hereby promulgate the following executive order:

Section 1.

Executive order 87-151 creating the Advocacy Center for Persons with Disabilities is hereby amended to provide for an extension of the existence of said body to and including December 31, 1998.

Section 2.

Except as amended hereby, executive order 87-151 is hereby
ratified and reaffirmed.



IN TESTIMONY WHEREOF, I have
hereunto set my hand and
caused the Great Seal of the
State of Florida to be affixed
at Tallahassee, the Capitol,
this _22nd_ day of November, 1994

_____
GOVERNOR

ATTEST:

_____
SECRETARY OF STATE