FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

99 FEB 25   AM 10 17

ADVOCACY CENTER FOR PERSONS
WITH DISABILITIES, INC.,

               Plaintiff,

v.                              Case No. 98-144-CIV-FTM-24(D)

MYERS KURTZ, et al.,

               Defendants.
_____/

## O R D E R

     This cause comes before the Court for consideration of the following:

     (1) Motion, of Defendants, to Dismiss Complaint (Doc. No. 5) and Memorandum in Support (Doc. No. 6); Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss Complaint (Doc. No. 9); Reply, of Defendants, to Plaintiff's Response to Defendants' Motion to Dismiss Complaint (Doc. No. 13); and Plaintiff's Memorandum in Response to Defendants' Reply to Plaintiff's Response to Defendants' Motion to Dismiss Complaint (Doc. No. 14).

     (2) Motion, of Defendants, for Judicial Notice (Doc. No. 7). The Plaintiff filed no response to this motion, and has indicated to the Defendants that it does not oppose this motion.

### I. Background

#### A. The Parties

     Plaintiff, the Advocacy Center for Persons with Disabilities, Inc. ("Advocacy Center"), is a private non-profit Florida corporation designated by the Governor of Florida as the recipient of federal funds for programs providing protection and advocacy of the rights of disabled persons. See Complaint ¶ 16 and Exh. 1. The Advocacy Center was established pursuant to the Protection and

Advocacy for Mentally Ill Individuals Act (also known as the Protection and Advocacy for Individuals with Mental Illness Act), Title 42 U.S.C. § 10801, et seq. ("PAIMI Act").  Complaint ¶ 17.

Defendant Edward Feaver is the Secretary of the Florida Department of Children and Family Services ("DCF").  Complaint ¶ 21.  Feaver is responsible for and controls the administration of all public mental health services to persons residing in the State of Florida, including persons who are confined at the G. Pierce Wood mental institution ("G. Pierce Wood").  See id.  Feaver has the ultimate administrative responsibility for the investigation of reports of abuse and neglect of children, elders, and persons with disabilities.  **Fla. Stat.** § 20.19(1), (4)(b)3 (1998); see id.

Defendant Frances Gibbons is the Acting District Administrator of DCF District Eight. Gibbons has supervisory authority over the Administrator of G. Pierce Wood and over all DCF District Eight Protective Services personnel.  Complaint ¶ 22.

Defendant Myers Kurtz is the Administrator of G. Pierce Wood.  Kurtz has the day-to-day responsibility for and control of the operations of G. Pierce Wood.  Complaint ¶ 23.

B. The Basis for the Lawsuit

Plaintiff has filed the instant civil rights action to seek declaratory and injunctive relief. Complaint ¶ 1.  Plaintiff contends that it has been denied full disclosure of abuse and neglect records, mortality review  reports, and institutional incident reports regarding the abuse, neglect, or injury of persons who are confined at G. Pierce Wood, which is a state institution operated by the Defendants at Arcadia, DeSoto County, Florida.  Complaint ¶ 2.  Plaintiff contends that these records are prepared and maintained by the Defendants and their employees or agents, and as such, Plaintiff

has a right to access them.  Complaint ¶ 4.  In addition, Plaintiff contends that it has a broad right

to access of the facility without prior notice, as well as the persons housed therein.  See id.

Plaintiff alleges that approximately 350 persons who have mental illness are confined at G.

Pierce Wood.  Complaint ¶ 25.  Plaintiff notes that since 1988, the conditions at G. Pierce Wood

have been the subject of a civil rights class-action which is currently pending before this Court.  See

Miller Frank Johnson, et al. v. Myers Kurtz, et al., Case No. 87-369-CIV-T-24(E).  Complaint ¶ 26.

Plaintiff alleges that G. Pierce Wood is not accredited by the Joint Commission on Accreditation of

Healthcare Organizations.  Complaint ¶ 27.  Further, Plaintiff alleges that on August 21, 1995, the

Inspector General of the Office of the Governor and the Department of Health and Rehabilitative

Services (HRS) (of which DCF is a part) released a report which documented continuing abuse,

neglect and injury of persons confined at G. Pierce Wood, including several deaths. Complaint ¶ 28.

Plaintiff alleges that despite lawful requests for reports under the PAIMI Act, on July 31,

1996 the HRS District Eight refused to provide copies of any Protective Services records concerning

abuse, neglect, and injury, and refused to provide copies of unredacted institutional incident reports.

Complaint ¶ 31.  Plaintiff alleges that its requests that HRS District Eight reconsider its position

have been rejected, as Defendants continue to refuse to provide the requested records to date.

Complaint ¶ 37.

Plaintiff alleges that since the date of its final discussion with the Defendants, the occurrence

of the following recent events cause it to have continued concern about the facility.  Plaintiff

contends that based upon newspaper reports and other sources, two persons confined at the facility

died amidst allegations of abuse, neglect and injury.  Complaint ¶ 40. Donald Harper allegedly died

in January 1998 after reporting severe abdominal pain for more than 12 hours with no appropriate

medical response.  See id.  Additionally, Elgia Dupuis died on February 3, 1998, after suffering head injuries and trauma allegedly inflicted on her by persons employed at G. Pierce Wood.  See id. Plaintiff contends that its investigation into these recent deaths disclosed "serious deficiencies" in the delivery of appropriate care to Ms. Dupuis and in the facility's risk management and quality assurance programs.  Complaint ¶ 42.

Plaintiff contends that it also learned in early 1998 that approximately eight persons confined at G. Pierce Wood died unexpectedly during 1997.  Complaint ¶ 43.  Plaintiff asserts that this number is much greater than the number of unexpected deaths at other institutions operated by Defendant Feaver.  See id.

C. What Plaintiff Seeks

In Count One of the Complaint, Plaintiff charges the Defendants with violation of 42 U.S.C. § 10806(b)(3), for failure to provide the reports described above.  In Count Two, Plaintiff charges the Defendants with obstruction of monitoring authorized by law.

Plaintiff seeks the following injunctive relief:

(1) Abuse and neglect investigation reports that are prepared by Defendants or their employees or agents in the Department of Children and Family Services' (DCFS) Protective Services Unit;

(2) Incident reports prepared by G. Pierce Wood staff regarding abuse, neglect or injury of persons confined at the facility;

(3) Mortality review reports prepared by G. Pierce Wood staff regarding the causes of the deaths of persons who are confined at the facility when abuse, neglect, or injury is reported or suspected;

4

(4) Unaccompanied access to visit with persons who are confined at G. Pierce Wood, and to all areas of G. Pierce Wood that are used or occupied by persons confined there.

Plaintiff also seeks its attorneys' fees and costs incurred in this lawsuit.

The Defendants contend that the lawsuit should be dismissed in its entirety pursuant to Rule 12 of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted.

## II. Standard of Review

In deciding a motion to dismiss, the district court is required to view the complaint in the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232 (1974). A complaint should not be dismissed for failure to state a cause of action "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Bank v. Pitt, 928 F.2d 1108, 1111-12 (11th Cir. 1991) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The Federal Rules of Procedure "do not require a claimant to set out in detail the facts upon which he bases his claim." Conley, 355 U.S. at 47. All that is required is "a short and plain statement of the claim." Fed. R. Civ. P. 8(a)(2). The standard on a 12(b)(6) motion is not whether the plaintiff will ultimately prevail in his theories, but whether the allegations are sufficient to allow them to conduct discovery in an attempt to prove allegations. Jackam v. Hospital Corp. of Am. Mideast, Ltd., 800 F.2d 1577, 1579 (11th Cir. 1986). The Federal Rules have adopted this "simplified pleading" approach because of "the liberal opportunity for discovery and other pretrial procedures ... to disclose more precisely the basis of both claim and defense ...." Conley, 355 U.S. at 48. The purpose of notice pleading is to reach a decision on the

5

merits and to avoid turning pleading into "a game of skill in which one misstep by counsel may

be decisive to the outcome." Id.

### III. Discussion

The Defendants raise the following issues in the motion to dismiss: (1) the PAIMI Act

does not mandate disclosure of either the incident reports or the mortality review committee

records to the Advocacy Center; (2) the mortality review records in their entirety and unredacted

incident reports are privileged under both state and federal law, and as such have been properly

withheld from the Advocacy Center; (3) the Advocacy Center lacks standing to seek an

injunction requiring the production of unredacted incident reports, or to have access to G. Pierce

Wood; and (4) if the Advocacy Center does have standing, it should only be entitled to

accompanied access to G. Pierce Wood, or in the alternative to reasonable unaccompanied access

to the facility.

A. Disclosure Mandated under the PAIMI Act

The Defendants contend that two provisions of the PAIMI Act govern access to records,

42 U.S.C. § 10805(a)(4) and § 10806(b)(3), but neither mandates disclosure to Plaintiff in this

case. Title 42 U.S.C. § 10805(a)(4) governs the rights of advocacy groups established pursuant to

the PAIMI Act to client records.[1]  The Defendants argue that while this is an access provision, it

---

[1] The pertinent provisions of 42 U.S.C. 10805 are as follows:
   (a) A system established in a State under section 10803 of this title to protect and
   advocate the rights of individuals with mental illness shall have the authority ... (4)
   in accordance with section 10806 of this title, have access to all records of -
        (A) any individual who is a client of the system if such individual, or the legal
        guardian, conservator, or other legal representative of such individual, has
        authorized the system to have such access;
        (B) any individual (including an individual who has died or whose whereabouts
        are unknown) -
             (i) who by reason of the mental or physical condition of such individual

6

does not authorize disclosure to the Plaintiff.  In its response, the Plaintiff agrees with the

Defendants' assertion, and indeed the Court notes that in its complaint, the Plaintiff charges as

Count One "violation of 42 U.S.C. § 10806(b)(3)," not section 10805(a)(4).

It is therefore section 10806(b)(3) that is at issue in this case.  Section 10806 is titled

"access to records," and subsection (b) pertains specifically to disclosure.  Subsection (b)(3)(A)

defines the records to which an advocacy center such as the Plaintiff is entitled: "[a]s used in this

section, the term "records" includes reports prepared by any staff of a facility rendering care and

treatment or reports prepared by an agency charged with investigating reports of incidents of

abuse, neglect, or injury occurring at such facility that describe incidents of abuse, neglect, and

injury occurring at such facility and the steps taken to investigate such incidents, and discharge

planning records."  42 U.S.C. § 10806(b)(3) (1998).

The Defendants make several arguments in support of their assertion that the records

sought cannot be obtained pursuant to section 10806(b)(3), and as such, they argue their motion

to dismiss on this claim should be granted.  First, the Defendants contend that Plaintiff cannot

access the mortality review committee records and incident reports because these records and

---

is unable to authorize the system to have such access;
(ii)  who does not have a legal guardian, conservator, or other legal
representative, or for whom the legal guardian is the State; and
(iii)  with respect to whom a complaint has been received by the system
or with respect to whom as a result of monitoring or other activities
(either of which result from a complaint or other evidence) there is
probable cause to believe that such individual has been subject to abuse
or neglect; and
(C)  any individual with a mental illness, who has a legal guardian, conservator,
or other legal representative, with respect to whom a complaint has been
received by the system or with respect to whom there is probable cause to
believe the health or safety of the individual is in serious and immediate
jeopardy ... . 42 U.S.C. § 10805(a)(4) (1998).

reports were not "prepared by staff rendering care and treatment." Motion at 4. As a footnote, the Defendants state that the incident reports "are part of the 'risk management' activities for hospitals, and are part of the workpapers of the attorney for the hospital. They are not considered to be records of health care staff. § 395.0197(4)." In addition, the Defendants assert that the second portion of subsection (b)(3) is similarly inapplicable to these records: "Further, mortality review committee records and incident reports are not 'reports prepared by an agency charged with investigating reports of incidents of abuse, neglect, or injury at GPW.' By Florida law, the agency responsible for investigating reports of abuse, neglect or injury involving adults would be the department, not GPW or its staff (citations omitted)." Motion at 4.

The Court is not persuaded by this argument. In essence, in one paragraph of the argument, Defendants are contending that the Plaintiff cannot obtain the requested records because they were written by "GPW or its staff," not the agency charged with investigating reports of abuse. Yet in the other portion of its argument, the Defendants contend that this is not considered prepared by G. Pierce Wood or its staff. This is internally inconsistent.

To the extent that the Defendants contend that the records are prepared by G. Pierce Wood and its staff, but are not within the scope of section 10806(b)(3) because (1) they were not prepared by staff rendering care and treatment and (2) they are the workpapers of the attorney of the hospital, the Court is also unpersuaded. Section 10806(b)(3) does not state staff rendering care or treatment, it states "reports prepared by any staff of a facility rendering care and treatment." Furthermore, the Court does not agree with the Defendants' assertions that the Plaintiff cannot obtain the documents because they are part of the workpapers of the attorney of the hospital. While **Fla. Stat.** § 395.0197(4) states that incident reports are part of the

workpapers of the attorney for the purposes of litigation, it also states that such reports "are subject to discovery, but are not admissible as evidence in court." The fact that such reports can properly be obtained by opposing counsel in litigation suggests to the Court that they may also be obtained by the Plaintiff in this instance.

The Defendants' second argument for the dismissal of the Plaintiff's requests pursuant to the PAIMI Act is that under section 10806(a), the maintenance of confidentiality under the statute only applies to client records to which the Plaintiff has access under section 10805(a)(4); because other records are not covered under this confidentiality section, this suggests that the Plaintiff is not entitled to any records other than client records. The Court finds that the Defendants have incorrectly interpreted section 10806. In addition to section 10806(b)(3)(A) quoted above, the statute also states in section 10806(b)(3)(B) that "[a]n eligible system shall have access to the type of records described in subparagraph (A) in accordance with the provisions of subsection (a) of this section . . . ." The statute thus plainly states that in obtaining records under section 10806(b)(3)(A), an eligible system such as the Advocacy Center must act in accordance with the confidentiality provision of section 10806(a). Therefore, the Court rejects the Defendants' second argument.

Although they did not raise these issues in their initial motion to dismiss, in their reply to the Plaintiff's response the Defendants make two additional arguments. As their third argument, the Defendants contend that the Plaintiff cannot obtain the records it seeks because it did not allege in its complaint that it ever requested these reports. The Court turns to the Plaintiff's complaint, and cites the following: "[o]n September 5, 1996, Plaintiff documented to Secretary Feaver and HRS General Counsel Richard Doran its records requests under the PAIMI Act, the

9

legal authority for those requests, and Plaintiff's right to unredacted abuse and neglect investigation reports and internal institutional reports regarding abuse, neglect and injuries of person confined at G. Pierce Wood, and asked that they reconsider the denial of Legal Counsel for HRS District Eight." Complaint 33. In addition to this paragraph, the Plaintiff also detailed other requests made for the documents at issue in its Complaint. Complaint ¶¶ 29-37. Therefore, the Court finds that the Plaintiff properly alleged that it requested the reports prior to initiating the instant action.

The fourth and final argument presented by the Defendants in support of its motion to dismiss the complaint's request for documents pursuant to the PAIMI Act is one of statutory construction. Although the Defendants suggested in their motion to dismiss that the Plaintiff has no right to the requested documents, the Defendants argue in their reply brief (presumably in the alternative) that Plaintiff has a right only to certain types of the requested documents. In particular, the Defendants contend section 10806(b)(3) "does not authorize Plaintiff to obtain <u>any</u> reports concerning abuse, neglect or injury, but rather only those reports which <u>describe</u> incidents of abuse, neglect and injury" (emphasis in original). Defendants go on to explain that under state law, all reports of alleged abuse, neglect or injury are investigated, and upon completion of the investigation are classified as proposed confirmed (abuse exists), unfounded (no abuse), or closed without classification (abuse might exist). Defendants contend that Plaintiff has a right only to proposed confirmed, and perhaps closed without classification. Defendants assert that because Plaintiff did not request reports that describe abuse, neglect or injury, it should not be entitled to any such reports.

10

The Court is therefore asked to construe whether section 10806(b)(3) covers reports by the appropriate agency of alleged abuse or instead only of confirmed abuse. The Court finds that the suggested reading of the statute by the Defendants is not appropriate in this instance. In reaching this decision, the Court turns to the stated findings of Congress in creating the PAIMI Act:

> (a) The Congress finds that -
>> (1) individuals with mental illness are vulnerable to abuse and serious injury . . .
>> (3) individuals with mental illness are subject to neglect, including lack of treatment, adequate nutrition, clothing, health care, and adequate discharge planning; and
>> (4) State systems for monitoring compliance with respect to the rights of individuals with mental illness vary widely and are frequently inadequate.

42 U.S.C. § 10801(a) (1998).

Congress thus explicitly found that one of the purposes of this statute was to create additional review because the state systems for monitoring compliance vary and may be inadequate. The reading suggested by the Defendants would thwart Congress's intent that advocacy groups for the mentally ill should conduct their own investigation in light of State agency inadequacies. If the Court read the statute as suggested by the Defendants, the Advocacy Center would only obtain documents where abuse, neglect or injury were already confirmed by the State agency. If this State agency is inadequate, as Congress suggests it may be, then pursuant to the Defendants' reading of the statute other instances of alleged abuse, neglect or injury would go undetected. Therefore, the Court finds that section 10806(b)(3) should be read to include reports of alleged abuse, not simply reports of confirmed abuse. Accordingly, the Defendants' motion to dismiss the Plaintiff's request under the PAIMI Act on this ground is also denied.

11

B. State and Federal Privilege

In the alternative to its arguments regarding the PAIMI Act, the Defendants also seek to dismiss the complaint on the grounds that the documents requested are protected under both the state and federal law of privilege.  In <u>Miller Frank Johnson, et al. v. Myers Kurtz, et al.</u>, Case No. 87-369-CIV-T-24(E), the same issue of privilege was raised both before Magistrate Judge McCoun and before this Court with regard to the same reports requested from the G. Pierce Wood facility.  The Magistrate Judge addressed the issue of the self-critical analysis privilege (<u>see</u> <u>Johnson</u>, Doc. No. 742, entered September 16, 1998), while this Court addressed the issue of a peer review privilege in an Order responding to objections made to the Magistrate Judge's ruling (<u>See</u> <u>Johnson</u>, Doc. No. 756, entered October 26, 1998).  In an effort to promote judicial consistency and economy, the Court will cite directly to these documents as part of the explanation for its finding that the Defendants' motion to dismiss on the grounds of state and federal privilege is denied.

1. Peer Review Privilege under Florida Statute § 766.101

In the Court's Order, it stated the following with regard to the peer review privilege asserted under Florida Statute § 766.101:

"As a result of the Magistrate Judge's Order, Defendants were compelled to produce certain documents relating to the Defendants' investigations and reviews of class member deaths at G. Pierce Wood Memorial Hospital.  The crux of Defendants' Objections is that the documents should be protected by the so-called "peer review" privilege, as found in Florida Statute § 766.101.  For the reasons stated below, the Court affirms the Magistrate Judge's Order and dismisses the Objections.

12

The issue presented by the Defendants' Objections is whether the Court should recognize as a federal privilege the so-called "peer review" privilege provided for in Florida Statute § 766.101. Under this provision, the investigations, proceedings and records of certain medical review committees, as defined in the statute, are not subject to discovery in a civil action against the provider of health services regarding matters which were subject to the evaluation and review of such a committee. See Fla. Stat. § 766.101(1)-(5).[2] The Florida Legislature intended to encourage the use of such committees to improve the quality of health care as well as to encourage service on such committees. See § 766.101(7).

In addressing another purportedly applicable privilege, the Magistrate Judge's Order provides useful background in the area of federal privilege, which the Court notes without further citation: (1) under Federal Rule of Evidence 501, the federal common law of privileges is controlling, rather than state law; (2) privileges are disfavored in the law; and (3) the party asserting a privilege bears the burden of proving that such privilege exists and is applicable. See Order, Doc. No. 742, at 3. The parties have not cited to, nor has the Court discovered, any Eleventh Circuit opinion addressing the issue of whether a federal peer review privilege should be recognized. Based upon a review of other law in the area, the Court finds that the peer review privilege as stated in Florida Statute § 766.101 should not be recognized in the instant case.

The Supreme Court addressed the issue of whether to recognize a federal peer review privilege in the employment discrimination area in University of Pennsylvania v. E.E.O.C.. 493 U.S. 182 (1990). The issue presented was whether the university could protect against disclosure

---

[2] The Court will assume without discussion for the purposes of this Order that the investigatory committee and reports in the instant action would have satisfied the definition set forth under the state law.

13

of peer review material relevant to charges of racial and sexual discrimination in the tenure

process.  See id. at 184.  When addressing the issue of whether to recognize a peer review

privilege in this area, the Court stated that although Congress specifically provided the courts

with flexibility in the development of federal privilege law, the Court was "disinclined to

exercise this authority expansively."  Id. at 189.  The Court ultimately found that the peer review

privilege should not be applied to prevent the plaintiff access to this important information.  In

reaching this finding to deny the university's request, the Court noted specifically that unlike

other privileges, the peer review privilege has no similar historical or statutory basis.  See id. at

195.

     In reliance in part upon the Supreme Court's decision in University of Pennsylvania, a

court in this Circuit refused to recognize the peer review privilege with respect to documents

sought in a class action suit by a group of patients at a state mental hospital seeking to enjoin the

allegedly unlawful administration of psychotropic drugs.  See Hightower v. Ledbetter, No. 93

Civ. 641 (N.D. Ga. February 23, 1998).  That court found specifically that there was no

"compelling justification to add a new federal privilege which would further restrict the broad

discovery permitted by Rule 26."  See id. at 6.  In the instant case, this Court finds similarly that

there should not be a additional restraint imposed upon discovery in the form a peer review

privilege."  Johnson, Doc. No. 756, Order entered October 26, 1998.

     As in Johnson, the Court finds it inappropriate to recognize a federal peer review

privilege in this matter.  Accordingly, the Defendants' motion to dismiss on this ground is

denied.

14

## 2. Self-Critical Analysis Privilege under Florida Statute 395.0197 & Federal Common Law

The Defendants contend that in addition to the peer review privilege, the documents should also be protected under the state and federal common law self-critical analysis privilege. The Court will cite to the Magistrate Judge's Order for the law pertinent to this analysis, although the Court  analyzes the issue separately.

In his Order on this issue, the Magistrate Judge stated as follows:

"By their response, Defendants object to production of mortality review documents primarily on the grounds that such documents are privileged as "risk management" documents under Section 395.0197 of the Florida Statutes and under the federal common law self-critical analysis privilege.  Additionally, Defendants argue that Plaintiffs can obtain substantially the same information through other sources that do not implicate any privileges.

In accordance with liberal discovery contemplated by the Federal Rules, it is well settled that the party asserting a privilege bears the burden of proving that a privilege exists and applies to the documents sought to be withheld.  See In re Grand Jury Investigation, 842 F.2d 1223, 1225 (11th Cir. 1987); Federal Deposit Ins. Corp. v. Cherry, Bekaert & Holland, 131 F.R.D. 596 (M.D. Fla. 1990); In re Air Crash Near Cali, Colombia on December 20, 1995, 959 F. Supp. 1529 (S.D. Fla. 1997).  Privileges are disfavored in the law, because they impede rather than further the quest for truth.  In Re Air Crash, 959 F. Supp. at 1532 (citing Trammel v. United States, 445 U.S. 40, 50 (1980)).

Pursuant to Rule 501 of the Federal Rules of Evidence, federal law of privileges are controlling in this action.  Defendants concede that state law privileges are not necessarily

15

applicable in federal court, but they urge the court to recognize Florida's risk management document privilege under the doctrine of comity between state and federal sovereignties. The court is unpersuaded that it should recognize the privilege applied to risk management documents by State law in this instance.

While some federal courts have recognized a self-critical analysis privilege,[3] they have placed restrictions and limitations on the applicability of the privilege: (1) the privilege extends only to subjective impressions and opinions contained in the report, not objective facts; (2) the protected information must be of a type whose flow would be curtailed if discovery was allowed; (3) the public must have a strong interest in preserving the free flow of information sought; and (4) no material should be privileged unless it was prepared with the expectation that it would be kept confidential and has in fact been kept confidential. See In Re Air Crash, 959 F. Supp. at 1532-33 (citations omitted); see also Dowling, 971 F. Supp. at 426 (citations omitted)."

---

[3] See, e.g., Reichhold Chems., Inc. v. Textron, Inc., 157 F.R.D. 522 (N.D. Fla. 1994) (applying privilege on a qualified basis to case brought under the CERCLA because the public interest in allowing parties to assess their compliance with environmental regulations outweighs the interest of opposing litigants in discovering such evidence); Berdice v. Doctors Hosp., Inc., 50 F.R.D. 249 (D.D.C. 1970) (minutes and reports of hospital staff designed to improve care and treatment of patients were entitled to qualified privilege because of the important public interest in having hospitals critically evaluate the quality of care they provide). But see Dowling v. American Hawaii Cruises, Inc., 971 F.2d 423 (9th Cir. 1992) (finding that, even if privilege exists, justifications for it do not support its application to voluntary routine safety reviews); United States v. Lockheed Martin Corp., 995 F. Supp. 1460, 1464-65 (M.D. Fla. 1998) ("Courts have, with few exceptions, declined to recognize any privilege for internal organizational self examinations"); United States v. Falsetti v. Southern Bell Telephone and Telegraph Co., 915 F. Supp. 308 (N.D. Fla. 1996) (refusing to recognize privilege in qui tam action brought under False Claims Act); United States v. State of Illinois, 148 F.R.D. 587 (N.D. Ill. 1993) (finding that the recognition of a state created privilege would thwart the Congressional intent and purpose of the Civil Rights of Institutionalized Persons to investigate and correct institutional civil rights violations).

<u>Johnson</u>, Doc. No. 742, Order entered September 16, 1998.  The Court does not cite to the

Magistrate Judge's analysis his findings in <u>Johnson</u> were unique and specific to that case.[4]

Before turning to the issue of any potential limitations to be imposed on self-critical

analysis privilege, the Court must first determine whether it is appropriate to recognize such a

federal privilege at all.  The Court finds that it is inappropriate in this circumstance to recognize

such a privilege.  The Court finds persuasive <u>United States v. State of Illinois</u>, 148 F.R.D. 587

(N.D. Ill. 1993), in which the United States filed an action against the State of Illinois pursuant to

the Civil Rights of Institutionalized Persons Act.  In <u>Illinois</u>, the Court found it inappropriate to

recognize a federal self-critical privilege.  <u>See id.</u> at 588.  In so doing, the Court adopted the

following analysis of the magistrate judge:

> First, because evidentiary privileges operate to exclude relevant evidence and
> therefore to block the judicial fact finding function, there are not favored and,
> where recognized, must be narrowly construed.  <u>United States v. Nixon</u>, 418 U.S.
> 683 (1974).  Second, in deciding whether the privilege asserted should be
> recognized, it is important to take into account the particular factual circumstances
> of the case in which the issue arises.  The court should weigh the need for the trust
> against the importance of the relationship or policy sought to be furthered by the
> privilege, and the likelihood that the recognition of the privilege will, in fact,
> protect that relationship in the factual setting of the case . . . The cause of action in
> this case is brought pursuant to the Civil Rights of Institutionalized Persons Act.
> The purpose of this Act is to allow and encourage, the Federal Government to
> investigate and correct institutional Civil Rights Violations.  Ironically, the goal
> of the Federal Legislation appears to be the same as the purpose behind the
> [Illinois] Medical Studies Act.  Both claim as their ultimate goal the improvement
> of medical services provided by the institutions which they cover.  Clearly,
> however, the goal of the Civil Rights of Institutionalized Persons Act is
> compelling.  <u>Id.</u> at 590-91.

------

[4]  The Magistrate Judge found that even if it were to recognize a self-critical analysis privilege, that privilege was inapplicable for the following reasons: "[T]he Defendants have failed to demonstrate that the creation and use of mortality review reports would be curtailed if discovery were permitted in this case. Moreover, the record indicates that such reports were not prepared with the expectation of confidentiality, nor have such reports been kept confidential."  <u>Johnson</u>, Doc. No. 742, Order entered September 16, 1998.

17

The Court finds the PAIMI Act similarly compelling when measured against the Defendants' need for the Court to recognize a self-critical analysis privilege. As noted above, the purpose of the PAIMI Act is to protect individuals with mental illness because they are subject to neglect and because the state systems for monitoring compliance with the rights of the mentally ill are often inadequate. See 42 U.S.C. § 10801. The Plaintiff's main purpose is to provide extra protection for the mentally ill. The Plaintiff does not seek monetary damages from the Defendants; it seeks only to protect the rights of the mentally ill. In addition, the Plaintiff is charged with maintaining the confidentiality of the documents obtained pursuant to section 10806(b)(3). The Court finds therefore that it is inappropriate to recognize a federal self-critical analysis privilege in this case. Accordingly, the Defendants' motion to dismiss on the grounds that the documents sought are protected by federal privilege is denied.

C. Standing

The Defendants contend the Plaintiff lacks standing to bring this action for injunctive relief because Plaintiff has not demonstrated any injury in fact, either present or future. As such, the Defendants argue that the suit should be dismissed. The Court finds that this argument is without merit.

Section 10805 of the PAIMI Act states in pertinent part as follows:

(a) A system established in a State under section 10803 of this title to protect and advocate the rights of individuals with mental illness shall -
    (1) have the authority to -
        (A) investigate incidents of abuse and neglect of individuals with mental illness if the incidents are reported to the system or if there is probable cause to believe that the incidents occurred;
        (B) pursue administrative, legal, and other appropriate remedies to ensure the protection of individuals with mental illness who are receiving care or treatment in the State; and

18

(C) pursue administrative, legal, and other remedies on behalf of an individual who -
     (i) is an individual with mental illness; and
     (ii) is a resident of the State ... .

The Court finds that on the basis of this statutory provision, the Plaintiff has standing to initiate the instant action.  Other Courts faced with the issue of whether an advocacy group has standing to pursue an action seeking injunctive relief have reached a similar conclusion.  See Trautz v. Weisman, 846 F.Supp. 1160, 1163 (S.D.N.Y. 1994); Rubenstein v. Benedictin Hosp., 790 F.Supp. 396, 409 (N.D.N.Y. 1992).  In discussing Rubenstein, the Trautz court stated as follows: "[w]hile the Rubenstein court found that PAMII's legislative history shed no light on the issue of standing, it found that the statute clearly conferred upon a system, here the Commission, the right to pursue legal remedies for the protection of mentally ill individuals.  We agree with this interpretation for, if Congress merely intended for state systems to act as advocates on behalf of mentally [ill] individuals, it would not have included (a)(1)(B) in the statute in addition to (a)(1)(C)."  Trautz, 846 F.Supp. at 1163.  This Court agrees with this statutory interpretation. The Court therefore finds that the Plaintiff has standing to initiate the instant action, and accordingly the Defendants' motion to dismiss on this ground is denied.

    D. Access

     The Defendants contend that the Court should only allow the Plaintiff accompanied access to G. Pierce Wood, or in the alternative reasonable unaccompanied access.  Although the Defendants have not cited the Court to anything other than Rule 12 of the Federal Rules of Civil Procedure in their motion, the Court will for obvious reasons construe this as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. The purpose of a

19

motion filed under Rule 12(b)(6) is to allege that a complaint should be dismissed by the Court because the plaintiff cannot obtain relief of the basis of the complaint it has filed.

In this last issue raised, the Defendants appear to be asking the Court to render a judgment as a matter of law as to the rights of the Plaintiff vis-a-vis potential access to the facility, and the type of access that is appropriate under the circumstances.  Such a request is not appropriately raised at this time, as it is not a "ground" upon which to grant the relief of dismissal, but rather a request for the Court to reach a finding in the event that the complaint is not dismissed.  Unlike the other issues raised by the Defendants, this issue is more appropriately raised at the summary judgment stage of the litigation.

### IV. Conclusion

(1) Defendants' Motion to Dismiss Complaint (Doc. No. 5) is **DENIED**.

(2) Defendants' Motion for Judicial Notice (Doc. No. 7) is **GRANTED**.

**DONE AND ORDERED** at Tampa, Florida, this **24**th day of February, 1999.

SUSAN C. BUCKLEW
United States District Judge

Copies to Counsel of Record