UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ADVOCACY CENTER FOR PERSONS
WITH DISABILITIES, INC.,

    Plaintiff,

v.    Case No. 98-144-CIV-FTM-24(D)

THOMAS SELLARS, et al.,

    Defendants.
_____/

## ORDER

This cause comes before the Court for consideration of Defendants' Cross-Motion for Summary Judgment (Doc. No. 38, filed February 8, 1999). The Plaintiff filed a response on February 25, 1999 (Doc. No. 44).

### I. Background

A. The Parties

Plaintiff, the Advocacy Center for Persons with Disabilities, Inc. ("Advocacy Center"), is a private non-profit Florida corporation designated by the Governor of Florida as the recipient of federal funds for programs providing protection and advocacy of the rights of disabled persons. See Complaint ¶ 16 and Exh. 1. The Advocacy Center was established pursuant to the Protection and Advocacy for Mentally Ill Individuals Act (also known as the Protection and Advocacy for Individuals with Mental Illness Act), Title 42 U.S.C. § 10801, et seq. ("PAIMI"). Complaint ¶ 17.

Defendant Kathleen Kearney is the Secretary of the Florida Department of Children and Family Services ("DCF"); she replaced former Secretary Edward Feaver in 1999, and was substituted as a Defendant in this matter on February 8, 1999. Kearney is responsible for and



controls the administration of all public mental health services to persons residing in the State of Florida, including persons who are confined at the G. Pierce Wood mental institution ("G. Pierce Wood"). Complaint at ¶ 21. Kearney has the ultimate administrative responsibility for the investigation of reports of abuse and neglect of children, elders, and persons with disabilities. **Fla. Stat.** § 20.19(1), (4)(b)3 (1998); see id.

Defendant Frances Gibbons is the Acting District Administrator of DCF District Eight. Gibbons has supervisory authority over the Administrator of G. Pierce Wood and over all DCF District Eight Protective Services personnel. Complaint ¶ 22.

Defendant Thomas Sellars is the Administrator of G. Pierce Wood. Sellars has the day-to-day responsibility for and control of the operations of G. Pierce Wood. Complaint ¶ 23. Sellars replaced former Defendant Myers Kurtz in this litigation on February 8, 1999 as Kurtz retired from his position as Administrator and was replaced by Sellars.

B. The Basis for the Lawsuit

Plaintiff has filed the instant civil rights action to seek declaratory and injunctive relief. Complaint ¶ 1. Plaintiff contends that it has been denied full disclosure of abuse and neglect records, mortality review reports, and institutional incident reports regarding the abuse, neglect, or injury of persons who are confined at G. Pierce Wood, which is a state institution operated by the Defendants at Arcadia, DeSoto County, Florida. Complaint ¶ 2. Plaintiff contends that these records are prepared and maintained by the Defendants and their employees or agents, and as such, Plaintiff has a right to access them. Complaint ¶ 4. In addition, Plaintiff contends that it has a broad right to access of the facility without prior notice, as well as the persons housed therein. See id.

Plaintiff alleges that approximately 350 persons who have mental illness are confined at G. Pierce Wood. Complaint ¶ 25. Plaintiff notes that since 1988, the conditions at G. Pierce Wood have been the subject of a civil rights class-action which is currently pending before this Court. See Miller Frank Johnson, et al. v. Thomas Sellars, et al., Case No. 87-369-Civ-T-24(E). Complaint ¶ 26. Plaintiff alleges that G. Pierce Wood is not accredited by the Joint Commission on Accreditation of Healthcare Organizations. Complaint ¶ 27. Further, Plaintiff alleges that on August 21, 1995, the Inspector General of the Office of the Governor and the Department of Health and Rehabilitative Services (HRS) (of which DCF is a part) released a report which documented continuing abuse, neglect and injury of persons confined at G. Pierce Wood, including several deaths. Complaint ¶ 28.

Plaintiff alleges that despite lawful requests for reports under PAIMI, on July 31, 1996 the HRS District Eight refused to provide copies of any Protective Services records concerning abuse, neglect, and injury, and refused to provide copies of unredacted institutional incident reports. Complaint ¶ 31. Plaintiff alleges that its requests that HRS District Eight reconsider its position have been rejected, as Defendants continue to refuse to provide the requested records to date. Complaint ¶ 37.

Plaintiff alleges that since the date of its final discussion with the Defendants, the occurrence of the following recent events cause it to have continued concern about the facility. Plaintiff contends that based upon newspaper reports and other sources, two persons confined at the facility died amidst allegations of abuse, neglect and injury. Complaint ¶ 40. Donald Harper allegedly died in January 1998 after reporting severe abdominal pain for more than 12 hours with no appropriate medical response. See id. Additionally, Elgia Dupuis died on February 3, 1998, after suffering head injuries and trauma allegedly inflicted on her by persons employed at G. Pierce Wood. See id.

Plaintiff contends that its investigation into these recent deaths disclosed "serious deficiencies" in the delivery of appropriate care to Ms. Dupuis and in the facility's risk management and quality assurance programs. Complaint ¶ 42.

Plaintiff contends that it also learned in early 1998 that approximately eight persons confined at G. Pierce Wood died unexpectedly during 1997. Complaint ¶ 43. Plaintiff asserts that this number is much greater than the number of unexpected deaths at other institutions operated by Defendant Feaver. See id.

C. What Plaintiff Seeks

In Count One of the Complaint, Plaintiff charges the Defendants with violation of 42 U.S.C. § 10806(b)(3), for failure to provide the reports described above. In Count Two, Plaintiff charges the Defendants with obstruction of monitoring authorized by law.

Plaintiff seeks the following injunctive relief:

(1) Abuse and neglect investigation reports that are prepared by Defendants or their employees or agents in the Department of Children and Family Services' (DCFS) Protective Services Unit;

(2) Incident reports prepared by G. Pierce Wood staff regarding abuse, neglect or injury of persons confined at the facility;

(3) Mortality review reports prepared by G. Pierce Wood staff regarding the causes of the deaths of persons who are confined at the facility when abuse, neglect, or injury is reported or suspected;

(4) Unaccompanied access to visit with persons who are confined at G. Pierce Wood, and to all areas of G. Pierce Wood that are used or occupied by persons confined there.

Plaintiff also seeks its attorneys' fees and costs incurred in this lawsuit.

## I. Standard of Review

Pursuant to Rule 56(c) the Federal Rules of Civil Procedure, Defendants now move for summary judgment on the ground that there is no genuine issue of material fact with regard to any of Plaintiff's claims against them, and therefore, they are entitled to judgment as a matter of law.

Federal Rule of Civil Procedure 56(c) authorizes summary judgment when all "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In Celetox Corp. v. Catrett, 477 U.S. 317, 322-23 (1986), the Supreme Court stated that Rule 56(c) requires a court to enter summary judgment against a party when, after discovery, he "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." In this situation, there can be no "'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. The Court stated that the moving party is entitled to summary judgment because "the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof." Id.

In summary judgment motions, the moving party bears the original burden of showing the court the basis for its motion and name parts of the pleadings, depositions, answers to interrogatories, and admissions which it feels show a lack of any genuine issue of material fact. See Hairston v. Gainesville Sun Pub. Co., 9 F.3d 913, 918 (11th Cir. 1993). Additionally, when

determining whether the movant has met the above-mentioned burden, the court must review the evidence in the light most favorable to the non-moving party. See id.; Welsh v. Celotex Corp., 951 F.2d 1235, 1237 (11th Cir. 1992); Rollins v. TechSouth, Inc., 833 F.2d 1525, 1528 (11th Cir. 1987). If the moving party successfully meets its burden, the burden then shifts to the non-moving party to show, by going beyond the pleadings, that genuine issues of material fact exist. See Hairston, 9 F.3d at 918; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

"It is not part of the court's function, when deciding a motion for summary judgment, to decide issues of material fact, but rather determine whether such issues exist to be tried." Hairston, 9 F.3d at 919. "Where a reasonable fact finder may 'draw more than one inference from the facts, and that inference creates a general issue of material fact, then the court should refuse to grant summary judgment.'" Id. (quoting Barfield v. Brierton, 883 F.2d 923, 933-34 (11th Cir. 1989)).

### III. Discussion

The Defendants raise the following issues by their motion for summary judgment: (1) Plaintiff fails to allege or demonstrate standing to sue Kathleen Kearney, Frances Gibbons and Thomas V. Sellars for injunctive or declaratory relief; (2) Plaintiff lacks standing to sue for access to incident reports, abuse reports and unaccompanied access to persons confined at G. Pierce Wood facility; (3) Plaintiff alleges no deprivation of a right, privilege or immuity protected by Title 42 U.S.C. § 1983; (4) PAIMI does not afford Plaintiff a statutory entitlement to all incident reports, abuse and neglect reports, and mortality review committee reports; (5) Plaintiff cannot demonstrate a legal entitlement to mortality review committee reports because it

is covered by the peer review privilege; and Plaintiff's request for unaccompanied access to G. Pierce Wood should be denied as unreasonable in light of Plaintiff's role as amicus curiae in related case Johnson v. Sellars, 87-369-Civ-T-24(E).

**A. Standing to Sue Kearney, Gibbons and Sellars**

Defendants assert that Plaintiff lacks standing to sue Kearney, Gibbons and Sellars. As Defendants correctly explain, "the test for standing requires that: (1) there is an injury in fact, (2) the injury was caused by the defendant's conduct, and (3) the injury is capable of being redressed by a favorable ruling." Jairath v. Dyer, 154 F.3d 1280, 1283 (11th Cir. 1998) (citing to Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)). Defendants contend that Plaintiff lacks standing to bring this action against Kearney and Sellars because it has made no allegation or showing that they intend to continue any past policies of their predecessors which are currently in dispute. As to Gibbons, Defendants state that although she was originally named in this action, most of the events in question occurred before her tenure as Acting District Administrator, similarly no evidence shows that she intends to continue any past policies of her predecessors. Defendants assert therefore that Plaintiff is unable to demonstrate either that there is an injury or that it was caused by Defendants' conduct; as such, Plaintiff fails prongs one and two of the test for standing.

In support of this position, Defendants cite to Spomer v. Littleton, a civil rights action in which the plaintiff alleged willful and malicious racial discrimination on the part of the State's Attorney of Alexander County, Illinois. See 414 U.S. 514, 515-19 (1974). During the pendency of the action, and subsequent to the decision rendered by the Court of Appeals, a new State's Attorney was elected. See id. at 520. The Supreme Court found that the case should be

remanded to the lower court for a determination of whether the claim was moot in light of the fact that the State's Attorney had changed, and whether the plaintiffs should be able to amend the complaint to demand relief against the successor. See id. at 522. As support for this finding, the Supreme Court made the following statement which this Court finds instructive:

> No allegations in the complaint cited any conduct of W.C. Spomer as the basis for equitable or any other relief. Indeed, Spomer is not named as a defendant in the complaint at all, and, of course, he never appeared before either the District Court or the Court of Appeals. The injunctive relief requested against former State's Attorney Berbling, moreover, is based upon an alleged practice of willful and malicious racial discrimination evidenced by enumerated instances in which Berbling favored white person and disfavored Negroes. The wrongful conduct charged in the complaint is personal to Berbling, despite the fact that he was also sued in his then capacity as State's Attorney. No charge is made in the complaint that the policy of the office of State's Attorney is to follow the intentional practices alleged ... [n]or have respondents ever attempted to substitute Spomer for Berbling after the Court of Appeals decision, so far as the record shows, or made any record allegations that Spomer intends to continue the asserted practices of Berbling of which they complain.

Id. at 521.

On the basis of this reasoning, the Court finds Spomer can easily be distinguished, and in fact highlights why the Defendants' argument regarding standing is without merit. The action alleged in Spomer was intentional racial discrimination, which the Court found specifically was personal to the first Defendant in the action. In addition, the Court found that there was no evidence in the record that the alleged unlawful actions were being furthered by the new State's Attorney. The case at bar is totally dissimilar. Defendants' decisions to deny Plaintiff records and access to G. Pierce Wood were and are clearly rendered in an official capacity; these decisions were not personal to any Defendant. Additionally, it is clear from this very motion for summary judgment that Defendants continue to maintain the same position towards the Plaintiff's requests for documents and access. This evidence that the Defendants are continuing the same

policies of their predecessors. Therefore, while the Court does not by this analysis make a pronunciation as to the lawfulness of these policies, it finds that Plaintiff does not lack standing to sue Kearney and Sellars simply because they were substituted as Defendants this year, or in the case of Gibbons, after the time of the initial alleged violations. Defendants' request for judgment as a matter of law on the ground that Plaintiff lacks standing to sue Kearney, Gibbons or Sellars is accordingly without merit and is denied.

### B. Plaintiff Lacks Standing to Sue under PAIMI

Defendants assert that Plaintiff also lacks standing to sue to obtain documents or access to residents under PAIMI because "PAIMI was not enacted to protect Plaintiff's right to investigate or monitor" and because Plaintiff has not demonstrated any injury in fact.

The Defendants raised a similar argument before this Court in their motion to dismiss the Complaint for failure to state a claim upon which relief could be granted. The Court's order on the motion to dismiss, issued during the same time period as this motion was filed, dismissed this argument as being without merit. See Doc. No. 43 at 18-19. In particular, the Court found that an advocacy group has standing to sue for injunctive relief pursuant to 42 U.S.C. § 10805(a). The Court notes additionally that the Eleventh Circuit has recently issued an opinion on this issue, finding specifically that an Advocacy Center has standing to sue under PAIMI. See Doe v. Stincer, 1999 WL 269679 at *5 (11th Cir. May 4, 1999). Therefore, Defendant's request that this action be dismissed for lack of standing under PAIMI is denied as nonmeritorious.

### C. Title 42 U.S.C. § 1983

Defendants assert that Plaintiff cannot bring this action pursuant to 42 U.S.C. § 1983 because Plaintiff cannot demonstrate that PAIMI, the federal statute in question, was designed to

benefit Plaintiff. Plaintiff asserts in response that it cannot enforce its rights under PAIMI though any other enforcement mechanism; therefore, it must pursue the relief requested via section 1983.

In 1980, the Supreme Court rejected the argument that section 1983 creates a cause of action only for consitutional violations and for the violation of civil rights and equal protection laws; the Court held that the statute encompasses claims based on "purely statutory" violations of federal law. Harris v. James, 127 F.3d 993, 997 (11th Cir. 1997) (citing to Maine v. Thiboutot, 448 U.S. 1 (1980)). However, the Supreme Court subsequently recongized two limitations to this broad proposition. See id. (citing to Wright v. Roanoke Redevelopment & Hous. Auth., 479 U.S. 418, 423 (1987)). First, a plaintiff cannot sue under section 1983 for federal statutory violations where "Congress has foreclosed such enforcement of the statute in the enactment itself." Id. Second, only "federal rights" are protected, which must consist of more than a mere violation of federal law. Harris, 127 F.3d at 993 (citing Wright, 479 U.S. at 423).

The test used to determine whether a plaintiff has a "federal right" enforceable via section 1983 is an issue of

> whether the provision in question was intend[ed] to benefit the putative plaintiff ..... If so, the provision creates an enforceable right unless it reflects merely a congressional preference for a certain kind of conduct rather than a binding obligation on the governmental unit, ... or unless the interest the plaintiff asserts is too vague and amorphous such that it is beyond the competence of the judiciary to enforce.

Harris, 127 F.3d at 999 (citing Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 509 (1990)).

In this case, there is no issue, and the Defendants do not assert that Congress foreclosed such enforcement of the statute in its enactment. Indeed, the statute specifically confers authority upon advocacy groups such as the Plaintiff to pursue legal remedies. See 42 U.S.C.

10

§10805(a)(1)(B). Defendants argue instead that the statute was not intended to benefit the Plaintiff in this instance, but rather was designed to protect the rights of the mentally ill, and additionally that the rights asserted by Plaintiff are too amorphous and vague to be judicially enforceable.

The Court finds that the Defendants' arguments are without merit. PAIMI does not, as Plaintiff points out, merely reflect a statutory preference of Congress. The stated purpose of PAIMI is

> to assist States to establish and operate a protection and advocacy system for individuals with mental illness which will -
> (A) protect and advocate the rights of such individuals through activities to ensure the enforcement of the Constitution and Federal and State statutes; and
> (B) investigate incidents of abuse and neglect of individuals with mental illness if the incidents are reported to the system or if there is probable cause to believe that the incidents occurred.

42 U.S.C. § 10801(b). To effect this goal, the statute allows advocacy groups the right to pursue legal and administrative remedies on behalf of the mentally ill, to obtain access to records under certain conditions, and to obtain access to the facilities at which persons with mental illness are housed. See 42 U.S.C. § 10805. The Court finds therefore that Congress intended via the statute to confer a benefit upon advocacy groups, that of providing such groups with mechanisms to be used to protect the mentally ill. If such a benefit were not conferred upon advocacy groups, there would be no way in which they could serve their stated function of protecting persons with mental illness.

Additionally, the Court finds that the requests made by the Plaintiff in this case are neither amorphous nor vague. The Plaintiff has requested records and unaccompanied access to the facility in question. The Court will address below the merits of these requests, but they are

sufficiently defined so as not to be violative of the test set forth by the Supreme Court. Therefore, Defendants' request for judgment as a matter of law on the ground that Plaintiff cannot seek injunctive relief pursuant to section 1983 is denied.

### D. Plaintiff's Entitlement to Mortality Review Committee Reports

Defendants contend that Plaintiff is not entitled to any mortality review committee reports because these documents are covered under the "peer review" privilege and as such are exempt from any disclosure requirements. In its Order regarding the Defendants' motion to dismiss, the Court found it inappropriate to recognize a federal peer review privilege in this matter. For the reasons stated in its prior Order, the Court denies Defendants' request for judgment as a matter of law on the basis of the peer review privilege as the recognition of this privilege is not appropriate in these circumstances.

### E. Statutory Entitlement Pursuant to PAIMI

Defendants argue that Plaintiff is not entitled to the records it requests because it has not satisfied the PAIMI statutory requirements. The general provision entitled "system requirements" states the following regarding the disclosure of documents:

> (a) A system established in a Statute under section 10803 of this title to protect and advocate the rights of individuals with mental illness shall ... (4) in accordance with section 10806 of this title, have access to all records of -
>   (A) any individual who is a client of the system if such individual, or the legal guardian, conservator, or other legal representative of such individual, has authorized the system to have such access;
>   (B) any individual (including an individual who has died or whose whereabouts are unknown) -
>     (i) who by reason of the mental or physical condition of such individual is unable to authorize the system to have such access;
>     (ii) who does not have a legal guardian, conservator, or other legal representative, or for whom the legal guardian is the State; and
>     (iii) with respect to whom a complaint has been received by the system or with respect to whom as a result of monitoring or other

12

     activities (either of which result from a complaint or other
     evidence) there is probable cause to believe that such individual
     has been subject to abuse or neglect; and
  (C) any individual with a mental illness, who has a legal guardian,
conservator, or other legal representative, with respect to whom a
complaint has been received by the system or with respect to whom there
is probable cause to believe the health or safety of the individual is in
serious and immediate jeopardy, whenever -
     (i) such representative has been contacted by such system upon
receipt of the name and address of such representative;
     (ii) such system has offered assistance to such representative to
resolve the situation; and
     (iii) such representative has failed or refused to act on behalf of the
individual.

42 U.S.C. § 10805(a)(4).

  Section 10806, entitled "access to records," provides for the confidentiality of records obtained pursuant to section 10805(a)(4). See 42 U.S.C. § 10806(a). Sections 10806(b)(1) and (2) prohibits the disclosure of records obtained by an advocacy group pursuant to section 10805(a)(4) to the individual in question when a mental health care professional finds such disclosure would be harmful. Finally, the term "records" is defined in section 10806(b)(3) as follows:

  (b)(3)(A) As used in this section, the term "records" includes reports prepared by
any staff of a facility rendering care and treatment or reports prepared by an
agency charged with investigating reports of incidents of abuse, neglect, and
injury occurring at such facility that describe incidents of abuse, neglect, and
injury occurring at such facility and the steps taken to investigate such incidents,
and discharge planning records.
  (B) An eligible system shall have access to the type of records described in
subparagraph (A) in accordance with the provisions of subsection (a) of this
section and paragraphs (1) and (2) of subsection (b) of this section.

42 U.S.C. § 10806(b)(3).

  Defendants assert that the Plaintiff must satisfy the authorization requirements provided in section 10805(a)(4) in order to obtain any records as they are defined in section 10806(b)(3).

Plaintiff, conversely, contends that the two provisions establish separate access to records provisions, and therefore that it is not required to satisfy section 10805(a)(4), because section 10806(b)(3) allows it to do so in the alternative.

The Court finds that the Defendants' argument accurately describes the Plaintiff's burden to accessing records under PAIMI. It is clear from the multiple references to section 10805(a)(4) in section 10806 that Congress intended advocacy groups to satisfy the section 10805(a)(4) requirements as a prerequisite to obtaining documents as defined in section 10806(b)(3). The definition of "records" in section 10806(b)(3) does not provide a separate statutory grant of authority pursuant to which advocacy groups can access records.

As it did not believe that it was required to do so, the Plaintiff did not allege, and presumably did not attempt to satisfy the requirements of section 10805(a)(4). The Court finds that Plaintiff should be given an opportunity to do so. The parties are therefore instructed in the following manner. First, the case will be removed from the July 1999 trial calendar. Second, the Plaintiff shall be afforded an opportunity to satisfy the requirements of section 10805(a)(4) within the following 90 days. The Court recognizes that Plaintiff will not be able to do so unless it has the names of the patients for whom it must take action. The Defendants are therefore ordered to turn over to the Plaintiff within ten days of the date of this Order the names of all patients for who (1) an incident report has been filed, (2) an abuse and neglect report has been filed, or (3) a mortality review has been considered. At the expiration of the ninety-day period, the Plaintiff must file an amended complaint which properly alleges that the requirements of section 10805(a)(4) have been satisfied.

## F. Access to G. Pierce Wood Facility

Section 10805 states the following regarding access by advocacy groups to facilities housing persons with mental illness: "[a] system established in a State under section 10803 of this title to protect and advocate the rights of individuals with mental illness shall ... have access to facilities in the State providing care or treatment." 42 U.S.C. § 10805(a)(3). As the Defendants note, no definition of "access" is provided in PAIMI. The Code of Federal Regulations (C.F.R.) interpreting this provision states that

> [a] P & A system shall have reasonable unaccompanied access to public and private facilities and programs in the State which render care or treatment for individuals with mental illness, and to all areas of the facility which are used by residents or are accessible to residents. The P & A system shall have reasonable unaccompanied access to residents at all times necessary to conduct a full investigation of an incident of abuse or neglect.

42 C.F.R. § 51.42. In this case, the Defendants contend that any unaccompanied access is unreasonable per se.

Defendants state that Plaintiff is acting as amicus curiae on behalf of the plaintiffs in Johnson v. Sellars, 87-369-Civ-T-24(E), a lawsuit also regarding the G. Pierce Wood facility which has been pending for several years. As Plaintiff has a role both in Johnson and in this litigation, it may seek access to the facility to provide information in both cases. Although Plaintiff has a right to unaccompanied access to the facility under PAIMI, plaintiffs in Johnson may not have such a right. Therefore, Defendants assert, any unaccompanied access to the facility sought in this lawsuit is not equitable and should be found unreasonable as a matter of law.

The Court does not find merit in the position set forth by the Defendants. As Plaintiff correctly points out, Defendants have cited to no law in support of their position. In particular,

15

there is nothing in PAIMI or the C.F.R. stating that access should be limited where Plaintiff is involved in litigation over the same facility. Indeed, Plaintiff's role becomes of heightened importance in a situation such as this one where litigation has been ongoing since 1987 to correct alleged problems with the facility in question. To deny Plaintiff its right to unaccompanied access under these circumstances would be unreasonable. Therefore, the Court finds that the Defendants' request that unaccompanied access be found unreasonable as a matter of law is without merit and should be denied.

## IV. Conclusion

Accordingly, it is **ORDERED AND ADJUDGED** that Defendants' Cross Motion for Summary Judgment (Doc. No. 38, filed February 8, 1999) is **GRANTED in part and DENIED in part**. The Court grants summary judgment in favor of the Defendants as to the appropriate statutory interpretation of the interaction between 42 U.S.C. § 10805(a)(4) and § 10806(b)(3). Defendants' motion for summary judgment is denied on all other grounds.

The case is hereby **removed from the July 1999 trial calendar** to be rescheduled at a later time. The Defendants shall turn over to the Plaintiff the names of all patients for who (1) an incident report has been filed, (2) an abuse and neglect report has been filed, or (3) a mortality review has been considered **within 10 days of the date of this Order**. Plaintiff shall be afforded an opportunity to satisfy the requirements of 42 U.S.C. § 10805(a)(4) **within 90 days of the date of this Order**. At the expiration of the ninety-day period, the **Plaintiff must file an amended complaint** which properly alleges that the requirements of section 10805(a)(4) have been satisfied.

**DONE AND ORDERED** at Tampa, Florida, this 10th day of June, 1999.

*Susan C. Bucklew*
SUSAN C. BUCKLEW
United States District Judge

Copies to Counsel of Record